UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN INGRAM,

     Plaintiff,

v.                                                    Case No. 3:14cv10/CJK

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

_____/

## MEMORANDUM ORDER

     This case is before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying John Ingram's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.  The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73 for all proceedings in this case, including entry of final judgment.  Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the Commissioner, therefore, will be affirmed.

## ISSUES ON REVIEW

Plaintiff, who will be referred to as claimant, plaintiff, or by name, alleges two issues on appeal: (1) the Commissioner erred in improperly assessing claimant's mental capabilities; and (2) the Commissioner erred in improperly assessing claimant's physical capabilities.

## PROCEDURAL HISTORY

Claimant applied for DIB and SSI on October 10, 2010, alleging disability beginning on January 2, 2008.[1]  T. 179.[2]  Claimant's applications initially were denied, and the denial was upheld on reconsideration.  T. 122-29.  Claimant filed a request for a hearing on February 21, 2011.  T. 130-31.  Claimant's request was granted, and a hearing was conducted on June 20, 2012.  T. 57-82.  On August 6, 2012, the Administrative Law Judge ("ALJ") issued a decision finding plaintiff not disabled as defined by the Act.  T. 33-56.  On August 23, 2012, plaintiff requested review by the Appeals Council, which denied plaintiff's request.  T. 1-7, 31-32.  The ALJ's decision thus became the final determination of the Commissioner.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relative to the issue raised in this appeal:

- • "The claimant meets the insured status requirements of the Social Security Act through March 31, 2013."  T. 38.

---

[1] Plaintiff filed a prior application for DIB and SSI on January 25, 2008, which was denied. T. 83-100, 113-18.

[2] The administrative record, as filed by the Commissioner, consists of nine volumes (docs. 13-1 through 13-9) and has 590 consecutively numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

Case No. 3:14cv10/CJK

- "The claimant has not engaged in substantial gainful activity since January 2, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)."  T. 38.

- "The claimant has the following severe impairments: mood disorder, dysthmic disorder, cervical and lumbar degenerative joint disease, lumbago, and cervicalgia (20 CFR 404.1520(c) and 416.920(c))."  T. 38.

- "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  T. 39.

- "The claimant has the residual functional capacity to perform a range of light work.  The claimant can never climb ladders, ropes, or scaffolds; can occasionally stoop, balance, crouch, and crawl; frequently reach, handle, and finger; consistent with the PRTF ratings, he can frequently understand, remember, and carry out short and simple instructions; can never perform production pace work; and can occasionally interact with the general public, coworkers, or supervisors."  T. 40.

- "The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)."  T. 48.

- "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))."  T. 48.

- "The claimant has not been under a disability, as defined in the Social Security Act, from January 2, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))."  T. 49.

### FACT BACKGROUND AND MEDICAL HISTORY[3]

At the time of the hearing, plaintiff was fifty-three years old and a high school graduate.[4]  T. 60.  Plaintiff previously worked as a general laborer and merchandise deliver.  T. 74-75, 214, 228-30.  Plaintiff reported that he last worked on January 2, 2008, and could no longer work due to a variety of physical and mental conditions, including back and neck degenerative disc disease, bone spurs, unspecified knee problems, nerve damage that affected his legs, depression, anxiety, a left shoulder condition, and high blood pressure.  T. 213.

### STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not

---

[3] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record.  Claimant's history of care and treatment, to the extent pertinent, will be discussed in the Analysis section.

[4] The decision dated August 9, 2010, regarding plaintiff's prior applications became administratively final when it was affirmed by the Appeals Council on June 15, 2011.  T. 113-18.  Plaintiff was forty-eight years old on his alleged onset date.  T. 48, 119.  For purposes of these proceedings, however, plaintiff's onset date could not have been prior to August 9, 2010, at which time plaintiff was 51 years of age.

applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, therefore, "it cannot stand with a 'mere scintilla' of support." *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d. 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785

(M.D. Fla. Feb. 28, 2011).[5]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do his previous work, "but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

---

[5] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

4.  If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.[6]

5.  Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

"[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[7]  20 C.F.R. § 404.1545(1).  The ALJ establishes residual functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally

---

[6] Claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  *See Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir.  1986).

[7] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity.  We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 404.1512(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 404.1512(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.)  We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.  (See paragraph (e) of this section and § 404.1529.)[.]

20 C.F.R. § 404.1545(a)(3).

complaints of pain).  Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five.[8]  Often, both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict and that conflict leads, as in this case, to the points raised on judicial review by the disappointed claimant.

ANALYSIS

I.     Plaintiff's Mental Capabilities

A.     Intellectual Ability

Claimant first argues that the ALJ erred in improperly assessing mental capabilities.  Specifically, plaintiff complains that the ALJ incorrectly assumed a high school education and incorporated that assumption into the RFC and the hypothetical posed to the vocational expert.  Plaintiff admits he completed the twelfth grade, but says he functions "significantly under the high school level."  Doc. 15, p. 6.  Granting that some indications in the record suggest that plaintiff may have below average intellectual ability, and even verge on mental retardation, the record also contains evidence to the contrary.  In fact, the record as a whole shows plaintiff to be a self-sufficient individual who is acutely aware of both his mental and physical difficulties and able to make decisions regarding health matters and finances.[9]  Moreover, none of plaintiff's treating physicians questioned plaintiff's intellectual ability.  The ALJ

---

[8] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20 C.F.R. § 404.1520(a)(4).

[9] There are a number of suggestions in the record that plaintiff was a malingerer attempting to bolster his claim for DIB and SSI.

thus reasonably classified plaintiff as a high school graduate.[10]  *See Moore v. Barnhart*,405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] . . . even if the evidence preponderates against' the decision.").

B.     Weight Assigned to Doctors' Opinions

Plaintiff also argues that, instead of relying on the opinions of the examining psychologists, Dr. Randi McDonald and Dr. Lynne E. Lightfoot, as well as the opinions of plaintiff's treating psychiatrist, Dr. Kaberi Samanta, the ALJ gave undue deference to the opinions of examining physicians Robert Stainback and Robert Hodes.  Plaintiff complains that the record contains no indication of the qualifications of Dr. Stainback or Dr. Hodes and that the doctors' evaluations were based on an incomplete record that did not include Dr. Samanta's opinions, Dr. McDonald's evaluation, or all of the treatment records the from Lakeview Center.

Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-61 (11th Cir.

---

[10] The undersigned notes, as did the Commissioner in his memorandum, that plaintiff did not raise the issue of his intellectual ability in the proceedings below.  As the Commissioner also noted, "[a]n administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Street v. Barnhart*,133 F. Appx. 621,627 (l1th Cir. 2005) (quotation omitted).

1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *See Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases).  If a treating physician's opinion as to the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ is to give it controlling weight.  *See* 20 C.F.R. § 404.1527(c)(2).  Where a treating physician has merely made conclusory statements, however, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x. 875, 877 (11th Cir. 2013).

Here, in determining plaintiff's mental RFC, the ALJ considered all of the evidence of record and thoroughly explained his reasoning for weighing the evidence as he did.  The ALJ assigned significant weight to the treatment notes from the Lakeview Center, which repeatedly indicated a GAF score of 55 or 60.[11]  T. 46.

---

[11]  The GAF rating has two components: (1) symptom severity and (2) social and occupational functioning.  The GAF is within a particular range if either the symptom severity or the social and occupational level of functioning falls within the range.  When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the worse of the two.  The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34

1.    Dr. Lightfoot

The ALJ gave "[n]o significant" weight to Dr. Lightfoot's December 2010 opinion, finding that "[Dr. Lightfoot's] GAF score and assumption that the claimant has an intellectual impairment[ ] is inconsistent with the remainder of the evidence." T. 46-47.  As the ALJ pointed out, Dr. Lightfoot examined claimant on only one occasion and "there is no evidence of support for the extent of her opinion in the remainder of the treatment notes."  T. 47.

2.    Dr. Samanta

The ALJ gave "no substantial weight" to the opinions of Dr. Samanta, a treating psychiatrist, expressed in a September 29, 2011, Treating Source Mental Status Report.  T. 47.  The ALJ found that "[r]educed weight must be given to the mental health professional because her conclusion is based in significant measure on 'chronic severe pain' rather than any mental impairment."  T. 47.  In the ALJ's view, the chronic pain Dr. Samanta attributed to plaintiff "is not substantiated by the

---

(4th ed., text rev., 2000).  A GAF between 51 and 60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning;" a GAF between 61 and 70 indicates "mild" symptoms or "some difficulty in social, occupational or school functioning," but "generally functioning pretty well;" a GAF score between 71 and 80 indicates transient and expectable reactions to psychosocial stressors and no more than an slight impairment in social, occupational, or school functioning; a GAF score between 81 and 90 indicates no or minimal symptoms and good functioning in all areas.  *Id.*  The most recent edition of the Diagnostic and Statistical Manual no longer recommends use of the GAF scale, acknowledging that "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity and questionable psychometrics in routine practice." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

Although there were instances in which plaintiff was assigned a lower GAF while at Lakeview Center, those instances were limited and, at least at times, related to plaintiff's brief and voluntary inpatient treatment.  T. 46.

medical record and [Dr. Samanta's] specialization would not provide her any added weight regarding [plaintiff's] physical impairments.  Furthermore, the implication that [plaintiff's] pain interferes with [plaintiff's] concentration is directly contradicted by [Dr. Samanta's] own statement that [plaintiff's] concentration is 'fine.'"  T. 47.  Dr. Samanta also "stated that [plaintiff's] 'daily ability to function is compromised' after stating that he is able to care for himself, ambulate with a cane, exercise fair judgment and insight, and speak with no more than slightly intrusive speech."  T. 47. According to the ALJ, Dr. Samanta "even fails to show how she believes the 'chronic severe pain' that she has assumed to be present has influenced [plaintiff's] mood stability on the form itself in this conclusory statement.  However, most importantly, it is inconsistent with the remainder of [Dr. Samanta's] treatment notes at the Lakeview Center."[12]  T. 47.

The ALJ concluded the Residual Functional Capacity Questionnaire completed by Dr. Samanta on October 29, 2010, could not "be given any significant weight because "[t]he degree of marked limitations in this form is neither consistent with the evidence nor consistent with the same psychiatrist's opinion in [the Residual

---

[12] The law concerning conclusory statements is particularly applied where a doctor, even one who has treated the claimant, expresses opinions on a preprinted or "check-off" form.  Such opinion evidence will not bind the Commissioner.  Indeed, courts have found that such preprinted forms do not provide persuasive evidence of the validity of the opinions expressed therein.  *See Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("Check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions." (*citing Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))). Although such forms are admissible, "they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole."  *O'Leary v. Schweiker*, 710 F. 2d 1334, 1341 (8th Cir. 1983).

Functional Capacity Questionnaire completed on March 2, 2012]." T. 47. The ALJ gave "[s]ome weight" to the Residual Functional Capacity Questionnaire, but afforded "diminished weight" to Dr. Samanta's conclusions regarding plaintiff's physical conditions. T. 47. The ALJ also noted Dr. Samanta's "statement that there are moderate restrictions in [plaintiff's] activities of daily living is inconsistent with her statements earlier that [plaintiff] is able to care for himself;" according to the ALJ, "[e]ven that degree of restriction is not consistent with the treatment notes at the Lakeview Center." T. 47. The ALJ gave no weight to Dr. Samanta's conclusion that plaintiff would have marked limitations in the ability to perform either simple or repetitive tasks, finding it inconsistent with Dr. Samanta's indication that plaintiff had only moderate deficiencies in concentration, persistence, and pace. T. 47. Finally, the ALJ stated, [l]argely, the greatest factor in the diminution to the weight given to this document is the divergence from [Dr. Samanta's] office notes and the remainder of the treatment notes at the Lakeview Center, particularly those more recent notes near the time that [Dr. Samanta] completed this form." T. 47.

     3.    Dr. McDonald

The ALJ gave "very little weight" to the opinions set forth in the February 10, 2012, Medical Source Statement of Ability to Do Work-Related Activities (Mental) completed by Dr. McDonald. T. 47. According to the ALJ, "[i]t is internally inconsistent with regard to his examination report, the narrative opinion, and the disabling opinion expressed on the forms that were included with the report." T. 47. The ALJ noted that "[t]he symptoms asserted by the claimant during this evaluation are notably inconsistent with those throughout the treatment notes. The psychologist even noted that, although the claimant has involvement with Lakeview Center, his

description of treatment was limited to medication management only," which is "inconsistent with both the claimant's psychological allegations and the conclusion in B27F that the claimant has a poor prognosis."  T. 47.  The ALJ determined that "[t]he conclusions of the examining psychiatrist are not consistent with the treatment notes at the Lakeview Center or the remainder of the evidence."  T. 47.

The undersigned finds the ALJ's conclusions supported by substantial evidence in the record.  As the ALJ observed, plaintiff's treatment notes show that his mental impairments were no more than moderate in severity.  T. 45, 295, 302-03, 305-06, 311-12, 382, 459, 461, 502, 504, 506, 569, 579.  Despite his symptoms, plaintiff remained alert, oriented, pleasant, calm, and cooperative; he interacted appropriately; he was verbal and logical; his cognition was intact; and his insight and judgement were adequate.  T. 295, 303, 305-06, 311, 371, 459, 501, 505-06, 568.  Plaintiff participated in group therapy sessions at the Lakeview Center, during which he demonstrated adequate attention and concentration, language, and social skills and was able to work well with others and engage with the group.  T. 400, 403, 467, 469-70, 476, 508, 510, 512, 519, 524, 568.  Plaintiff's counselors noted he appeared unmotivated to progress based on his desire for disability benefits and was malingering.  T. 474, 479, 530.  The record shows that, over time, claimant experienced increased stability and decreased symptoms.  T. 295, 304, 403, 568, 579, 581.  Claimant reported no problems with his medication and said they helped reduce his symptoms; notably, at a recent visit, claimant denied any overt depressive symptoms.  T. 501, 505, 568.

D.     Drs. Stainback and Hodes

Moreover, contrary to plaintiff's assertions, the ALJ did not give controlling weight to the opinions of Drs. Stainback and Hodes, who opined plaintiff was able to meet the basic mental demands of work on a sustained basis.  T. 45, 411, 439 .[13] Instead, the ALJ afforded the opinions "some weight," noting that both Dr. Stainback and Dr. Hodes are psychologists and finding their opinions "consistent with the remainder of the medical evidence."   T. 47.   As state agency psychological consultants, Drs. Stainback and Hodes are considered highly qualified psychologists who are experts in the evaluation of the medical issues in disability claims, and their opinions may be given more weight than opinions from examining or treating sources.  See 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6P, 1996 WL 374180, at *2, 3 (S.S.A.).

II.     Plaintiff's Physical Capabilities

Plaintiff next argues the ALJ erred in assessing physical RFC.  As set forth above, the ALJ found plaintiff had the RFC to perform light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b), 416.967(b).  Light work also requires "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."  See id.  The ALJ found plaintiff's ability for light work restricted to the point that he could never climb ladders, ropes, or scaffolds and only occasionally stoop, balance, crouch, and crawl.  T. 40.  Plaintiff argues the ALJ erred in evaluating the medical opinions of Drs. Hankins, Garg,

---

[13] Also contrary to plaintiff's assertions, Dr. Stainback reviewed the record as of December 9, 2010, and Dr. Hodes reviewed the record as of January 25, 2011,

Dawson, and Kasbian when formulating plaintiff's physical RFC.

A.    Dr. Hankins

First, plaintiff contends the ALJ erroneously afforded "significant weight" to the opinion of Gloria Hankins, M.D., a non-examining agency physician who reviewed the evidentiary record on our about February 4, 2011.[14]  Dr. Hankins noted plaintiff used a cane for walking long distance and on uneven terrain.  T. 455.  She also noted plaintiff had neck pain and numbness and tingling in his hands and arms.  T. 455.  She further noted plaintiff had undergone no injections or surgery and had no additional treatment or change in functioning since his initial application.  T. 455.  Dr. Hankins observed plaintiff was able to perform daily grooming and personal care, dress himself and do very light chores, drive and go to the store to make purchases, and carry groceries to the house.  T. 455.  Dr. Hankins affirmed the initial RFC – full range of light work –  as consistent with the medical evidence.  T. 103-110, 455.  According to plaintiff, the record reveals little information about what limitations Dr. Hankins believed plaintiff to have at the time she reviewed plaintiff's file and Dr. Hankins' opinion regarding plaintiff's capabilities thus is unclear.

As a state agency physician, Dr. Hankins is a highly qualified physician and an expert in Social Security disability evaluation.  *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6P, 1996 WL 374180, at *2-3 (S.S.A.).  The ALJ found Dr. Hankins' opinion consistent with the remainder of the evidence and thus gave it significant weight.  The undersigned finds no error in that regard, as substantial evidence in the record supports a finding that plaintiff is capable of performing light

_____

[14]  According to plaintiff, Dr. Hankins failed to review plaintiff's MRI results.

Case No. 3:14cv10/CJK

work.  *See* 20 C.F.R. §§ 404.1527(c)(4),416.927(c)(4); *see also Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (ALJ did not err in relying on non-examining, non-treating physicians' opinions).

B.    Dr. Garg

Plaintiff further challenges the ALJ's rejection of the opinions of Dr. Anju Garg, who completed a Physical Capacities Evaluation and Pain Questionnaire on September 15, 2011.  In the Physical Capacities Evaluation,  Dr. Garg indicated plaintiff had limited use of his right arm for pushing and pulling arm controls.  T. 482.  He also noted chronic low back pain and chronic neck pain with right radiculopathies and found that plaintiff could only occasionally bend or squat and reach.  T. 482.  Dr. Garg opined plaintiff could frequently lift and carry up to ten pounds, occasionally lift up to twenty-five pounds, and stand or walk, combined, for only five hours in an eight-hour workday day.  T. 482.  Dr. Garg further indicated that plaintiff suffered from pain that was "frequently present to such an extent as to be distracting to the adequate performance of work activities."  T. 481.  According to Dr. Garg.  the side effects of plaintiff's medications could be "expected to be severe and to limit [plaintiff's] effectiveness due to distraction, inattention, drowsiness, etc." T. 481.

The ALJ gave "[s]ome weight" to the Residual Functional Capacity Assessment completed by Dr. Garg.  T. 46.  The ALJ found the limitations set forth in the form inconsistent with the level of pain or side effects of medication described in the Pain Questionnaire but gave significant weight to the lift and carry restrictions. T. 46.  The ALJ found the standing restriction inconsistent with plaintiff's ability to carry five pounds continuously, and he found plaintiff's pain level inconsistent with

the extent of his limitations.  T. 46.  The ALJ accorded "[f]ar greater weight" to the explicit "function by functions limitations" set forth in the Residual Functional Capacity Assessment but found that, due to inconsistencies, the document generally deserved "far reduced weight."  T. 46.  The ALJ also noted that Dr. Garg's findings were "accorded no significant support by a treating relationship because the only examination by Dr. Garg was nearly a year earlier and include[d] even further inconsistencies with the forms provided."  T. 46.

Plaintiff argues the ALJ erred in failing to give sufficient weight to the opinions of Dr. Garg and in failing to discuss the specific limitations identified by Dr. Garg, which plaintiff contends are consistent with the cervical MRI.  Plaintiff claims Dr. Garg was a treating physician despite the fact that Dr. Garg had seen plaintiff only once when Dr. Garg prepared the reports at issue.  Plaintiff also argues that the ALJ did not address Dr. Garg's opinion regarding plaintiff's inability to use his right hand and arm for pushing and pulling arm controls and ability to only occasionally bend and reach.  T. 482.  Plaintiff maintains that, absent an explanation from the ALJ either accepting or rejecting the limitations imposed by Dr. Garg, the court cannot determine whether the ALJ's reasons were supported by the medical evidence.

The ALJ plainly considered Dr. Garg's opinions but gave them only "some" weight because of contradictions and inconsistencies.  T. 42, 46.  *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  Having rejected some of Dr. Garg's opinions, the ALJ was not required to incorporate them into plaintiff's RFC.  Although the ALJ did not specifically address each aspect of Dr. Garg's findings, the ALJ specified the basis for the ALJ's rejection of Dr. Garg's findings – internal inconsistencies.  The ALJ's determination in that regard is supported by substantial evidence in the record,

particularly considering that Dr. Garg's opinions were not entitled to special deference. *See, e.g. Crawford v. Comm'f of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (recognizing that an opinion from a physician who had seen the claimant only once was not entitled to great weight as a treating physician's opinion); *see also* 20 C.F.R. §§ 404.1502, 416.902 (stating that a physician must have had an ongoing treatment relationship with a claimant to qualify as a treating source).

      C.    Dr. Dawson

      Plaintiff challenges the ALJ's decision to give"significant weight" to Dr. John A. Dawson's opinions, arguing that Dr. Dawson's report does not specify Dr. Dawson's qualifications, is based on a single consultative examination, and is inconsistent with the opinions of Drs. Garg and Kasabian. Plaintiff was evaluated by Dr. Dawson on November 30, 2010. T. 376-78. Dr. Dawson found plaintiff was able to lift twenty pounds frequently, ten pounds constantly, stand and walk for a total of six hours in an eight-hour work day, and sit for six hours in an eight-hour day. T. 378. He indicated claimant could use his upper and lower extremities for pushing and pulling consistent with those limitations. T. 378. Notably, Dr. Dawson also found claimant "exhibited exaggeration of pain response to every movement." T. 377-78. Specifically, Dr. Dawson noted plaintiff grimaced and gritted his teeth when a tuning fork was placed on plaintiff's forehead for a Rinne's test–presumably a maneuver not normally known to cause a painful sensation. T. 378. Dr. Dawson also noted that plaintiff required no assistance transferring in and out of a chair and on or off the examination table and that, although plaintiff carried a handheld assistive device, plaintiff did not use it during the examination and exhibited no signs of a limp. T. 377. Dr. Dawson opined that the device was unnecessary. T. 378. Plaintiff had

normal strength in his upper and lower extremities, but decreased sensation to the right lower extremity. T. 377. He could pick up a pen, turn a knob, and button and unbutton clothes without difficulty. T. 377. He was able to squat and bend and had a normal range of motion in the cervical spine but decreased flexion in the lumbar spine. T. 377. Plaintiff's other motions were normal. T. 377-78.

The ALJ gave significant weight to Dr. Dawson's opinion because Dr. Dawson was an examining source and his opinion was well supported by his examination of the claimant and consistent with the remainder of the evidence. T. 42, 46. *See* 20 C.F.R. §§ 404.1527(c)(4) and (6), 416.927(c)(4) and (6). Although there may be factors that weigh against Dr. Dawson's opinion, as plaintiff alleges, the ALJ is responsible for weighing the evidence and the undersigned cannot conclude that the ALJ erroneously did so with regard to Dr. Dawson's opinion. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977)). Indeed, Dr. Dawson's opinion is consistent with substantial evidence of record, including his own findings, Dr. Kasabian's findings, treatment notes, and Dr. Hankins' assessment. The ALJ thus did not err in affording it significant weight.

D.    Dr. Kasabian

In January 2012, Michael E. Kasabian, D.O., a consultative examiner, examined claimant and completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which Dr. Kasabian opined that Plaintiff had no physical limitations on the ability to work. Tr. 490-500. Dr. Kasabian noted that claimant ambulated without an assistive device, limp, or gross muscle atrophy and had normal grip dexterity. T. 490-91. Dr. Kasabian observed some reduction in

reflexes and range of motion in claimant's upper and lower back, but plaintiff was able to stand on his heels and toes and had a negative straight leg raising test, sitting and supine.  T. 490-91.  The ALJ found that plaintiff's ability to perform work at the light exertional level was "provided support by the objective findings and narrative statement" provided by Dr. Kasabian, but the ALJ acknowledged that Dr. Kasabian's opinions were "overly optimistic."  T. 46.  While the ALJ may have considered Dr. Kasabian's opinions in formulating plaintiff's RFC, he plainly did not rely on those opinions.  Even if the ALJ erred in considering Dr. Kasabian's opinions, therefore, such error was harmless.

Considering all of the evidence of record, the undersigned finds the ALJ reasonably determined plaintiff could perform light work and his decision is supported by substantial evidence.  As with plaintiff's mental RFC, the undersigned finds the ALJ engaged in a thorough and thoughtful review of the evidence and set forth detailed and well-reasoned explanations for the weight he assigned to the various medical opinions.

**ACCORDINGLY, it is ORDERED:**

1.    The decision of the Commissioner is AFFIRMED and plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income are DENIED.

2.  The clerk is directed to close the file.

**DONE AND ORDERED** this 4th day of March, 2015.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

Case No. 3:14cv10/CJK